In re MOUTOUSIS.

Phillip & Fay Moutousis, Debtors.

Phillip & Fay Moutousis, Plaintiffs,

v.

United States Trustee, Defendant.

Bankruptcy No. 8–50700.
No. 2:08–cv–14268.

United States District Court,
E.D. Michigan,
Southern Division.

Sept. 28, 2009.

---

R. Soren Andersen, Royal Oak, MI, for Debtors.

Jill M. Gies, Detroit, MI, for U.S. Trustee.

### ORDER REVERSING ORDER OF BANKRUPTCY COURT DISMISSING PETITION AND REMANDING FOR EVIDENTIARY HEARING

STEPHEN J. MURPHY, III, District Judge.

This is an appeal of the final order of the bankruptcy court dismissing the debtors' voluntary Chapter 7 petition. For the reasons stated below, this Court reverses the order dismissing the petition and remands to the bankruptcy court for an evidentiary hearing on whether the petition should have been dismissed because the filing of the petition is an abuse of the provisions of Chapter 7 under 11 U.S.C. § 707(b)(3) and the totality of the debtors' financial circumstances.

### JURISDICTION

This Court has jurisdiction over this appeal of the final order of the bankruptcy court dismissing the debtors' petition pursuant to 28 U.S.C. § 158(a)(1).

### STANDARD OF REVIEW

The bankruptcy court's findings of fact are reviewed for clear error, while its conclusions of law are reviewed *de novo*. *In re Behlke*, 358 F.3d 429, 433 (6th Cir.2004). The decision of the bankruptcy court that the totality of the circumstances constitute abuse of the provisions of Chapter 7 is reviewed for abuse of discretion. *Id.* at 434.

### FACTS

The Debtors, Phillip and Fay Moutousis, a married couple, filed a voluntary Chapter 7 bankruptcy petition with the United States Bankruptcy Court for the Eastern District of Michigan on April 30, 2008. At the time of the filing of the petition, the debtors had two adult dependent children, eighteen and twenty-one years old. *See* Schedule I, Current Income of Individual Debtor(s), Exhibit 1 of Record on Appeal. Phillip Moutousis at the time of filing was employed as an engineer with Ford Motor Company, and had been with the same employer for 13 1/2 years. *Id.* Fay Moutousis, his wife, was unemployed at the time of filing. *Id.*

The record shows Phillip Moutousis' monthly gross wages as $9,943.33. *Id.* Payroll deductions amount to $2,234.57, consisting of $2,234.57 in payroll taxes and social security, $1,171.75 insurance, and $1,717.93 "other" deductions. *Id.* The couple's combined average monthly income less these deductions was $4,819.08. *Id.* The $1,717.93 lump sum "other" deductions include a 401(k) plan contribution of $357.78, a $401 (k) loan repayment of $356.34, a contributory retirement payment of $134.17, vehicle leases of $859.64 and a United Fund contribution of $10. See Debtors' Response to United States Trustee's Motion to Dismiss Chapter 7 Case Under 11 U.S.C. § 707(b)(3), Exhibit 2 of Record on Appeal. The vehicle leases are for two cars leased through Mr. Moutousis' employer, and are for $400.64 per month and $367.45 respectively. Schedule G, Executory Contracts and Unexpired Leases, Exhibit 1 of Record on Appeal.

The Moutousis' Schedule J identifies average monthly expenses at $ 4,995.50. See Schedule J, Current Expenditures of Individual Debtor(s), Exhibit 1 of Record on Appeal. This includes $3,213.15 per month in mortgage and real estate taxes. *Id.* The debtors list credit card and related unsecured debt of $162,810.05. See Schedule F, Creditors Holding Unsecured Nonpriority Claims. They owe over $1,000 on eleven different lines of credit, with the

largest amount owed on one card being $34,288.00. *Id.*

On June 4, 2008, the United States Trustee filed a motion to dismiss the debtors' petition as an abuse of chapter 7 under 11 U.S.C. § 707(b)(1) and (b)(3), arguing that the totality of the circumstances demonstrated abuse. United States Trustee's Motion to Dismiss, Exhibit 2 of Record on Appeal. The United States Trustee's motion argued that the debtors' income deductions for 401(k) retirement contributions and 401(k) loan repayments should be considered disposable income available to repay creditors. *Id.* The United States Trustee also argued that the debtors' monthly housing costs of $3,307.23, including mortgage payments, property taxes, insurance and association dues, were excessive because they were three times the applicable IRS housing standard for Macomb County, Michigan, which is $1,097 for a family of four. *Id.* at 3. The United States Trustee also argued that the property was undersecured and only subject to a fifteen year mortgage rather than a thirty-year mortgage. *Id.*

On June 20, 2008, the debtors filed a response to the United States Trustee's motion. Exhibit 3 to Record on Appeal. In their response, the debtors acknowledged that their debts were primarily consumer debts, provided details for the line 4d of their schedule I, and requested an evidentiary hearing to allow presentation of evidence about the totality of the circumstances of their financial situation.

The bankruptcy court held an initial hearing on the United States Trustee's motion on July 21, 2008. See Transcript of July 21, 2008 hearing, Exhibit 5 of Record on Appeal. At the hearing, the United States Trustee argued that a 2007 tax refund received by the debtors suggested they were overwithholding and an

adjustment could make about $700 per month available to their creditors. The United States Trustee also argued that the debtors could reduce their voluntary 401(k) contributions, permitting an additional $500 per month to repay their debts. Finally, the United States Trustee argued that the debtors' housing costs were excessive and, if they replaced their housing with housing that cost twice the IRS standard, they could pay an additional $936 per month toward their unsecured debts.

Following the July 21, 2008 hearing the parties submitted briefs on the issue of whether the provisions of 11 U.S.C. § 1325(b)(3) for "above-median income" debtors should affect the "totality of the circumstances" analysis under 11 U.S.C. § 707(b)(3). The bankruptcy court held a second hearing on the United States Trustee's motion on September 15, 2008. At the end of the hearing, the bankruptcy court issued the following oral opinion granting the United States Trustee's motion to dismiss the petition as an abuse under § 707(b)(3):

> Under the case law interpreting Section 707(b)(3), in order for the debtors to obtain Chapter 7 relief, the Court must find that they have treated their creditors in the context of the bankruptcy and beforehand, fairly and honestly, equitably.
>
> The Court agrees with the U.S. Trustee's position that it hardly matters to the creditors whether the debtors' inability to repay the debt under their present circumstances results from excessive expenditures in food, transportation, vacations, recreation, or housing. Here the debtors make a choice to incur expenses for housing that is not fair to their creditors. It is excessive and not reasonably necessary for their support.
>
> Parenthetically, although not irrelevantly, the Court would note that from a

financial perspective, it's questionable whether it's even good judgment to continue to pay on a mortgage when the debt substantially exceeds the value of the property. But apart from that, if these debtors were to pay a reasonable amount for their housing, they would have substantial money left over each month to pay their unsecured creditors.

In the circumstances therefore, the Court must find that this is an abuse of Chapter 7 and the motion to dismiss is granted.

Transcript, Adjourned Hearing on U.S. Trustee's Motion to Dismiss, Exhibit 9 to Record on Appeal, pp. 7–8.

## ANALYSIS

The debtors appeal the order of the bankruptcy court dismissing the petition as an abuse of Chapter 7. The debtors argue that the bankruptcy court abused its discretion by relying exclusively on the debtors housing costs as its basis for finding an abuse of Chapter 7, instead of examining the totality of the circumstances as required by 11 U.S.C. § 707(b)(3)(B). The debtors also argue that the bankruptcy court's failure to conduct an evidentiary hearing to examine the circumstance surrounding the refinancing of the residence constitutes reversible error.

The bankruptcy court dismissed the Chapter 7 petition under 11 U.S.C. § 707(b)(1) and § 707(b)(3), which provides a means for the court to dismiss a petition as an abuse of Chapter 7.

11 U.S.C. § 707(b)(1) provides in relevant part as follows:

> (b)(1) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, trustee (or bankruptcy administrator, if any), or any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter....

The following section, § 707(b)(2), creates a formula for means testing that creates a rebuttable presumption of abuse. The United States Trustee has not asserted that the debtors' petition was presumptively abusive, and therefore has not sought dismissal under § 707(b)(2). Section 707(b)(3), however, provides that the court may determine a petition to be an abuse even absent a presumption of abuse, as follows:

> (3) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(i) of such paragraph does not arise or is rebutted, the court shall consider—
>
> (A) whether the debtor filed the petition in bad faith; or
>
> (B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

11 U.S.C. § 707(b)(3). This is the provision that the bankruptcy court relied upon in dismissing the debtors' petition here.

The leading case for interpreting abuse under Section 707(b)(3) in this circuit is *In re Krohn*, 886 F.2d 123 (6th Cir.1989). *In re Krohn* was decided prior to the 2005 Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), which lowered the threshold standard from substantial abuse of Chapter 7 to abuse and removed the statutory presumption in fa-

vor of granting Chapter 7 relief. The courts have interpreted the "totality of the circumstances" test for dismissing a petition as abusive as incorporating pre-BAPCPA case law, however, and courts in this circuit, however, still apply the analysis in *In re Krohn* in determining whether a petition is an abuse. *See, e.g., In re Beckerman*, 381 B.R. 841, 844–45 (Bankr. E.D.Mich.2008) (applying *Krohn* factors to determine whether petition was an abuse under § 707(b)(3)).

■■■ The debtors appear to argue in the first instance that the bankruptcy judge erred because there is no evidence of bad faith on the part of the debtors in the record. It is clear, however, that the bankruptcy court did not have to find bad faith as a predicate for dismissing the petition under Section 707(b)(3). First, the statute itself states clearly that abuse can be found either if the court finds the petition is filed in bad faith (Section 707(b)(3)(A)) *or* that the totality of the circumstances of the debtor's financial situation demonstrates abuse (Section 707(b)(3)(B)). This was also true prior to the passage of BAPCPA. *See In re Behlke*, 358 F.3d 429, 434 (6th Cir.2004) ("The bankruptcy court committed no legal error in finding substantial abuse absent a finding of 'dishonesty' "). The Court does not find persuasive the view of some commentators and the minority of courts that the institution of the mean test in § 707(b)(2) renders the debtor's ability to pay superfluous for purposes of § 707(b)(3) analysis, and it contravenes the plain language of the statute. *Accord In re Jensen*, 407 B.R. 378, 383–84 (Bankr. C.D.Cal.2009).

The Court finds the debtors' second argument more persuasive. The debtors argue that the bankruptcy court erred in dismissing the petition based upon a single factor, the size of the debtors' mortgage payments, to determine that the debtors were not treating their creditors fairly and that therefore the petition was an abuse of Chapter 7. The debtors argue that the dismissal based upon this single factor violates the precedent set by *In re Krohn* and the statutory requirement that the court determine that the "totality of the circumstances" demonstrate abuse before dismissing the petition. The United States Trustee argues in response, first, that *Krohn* was superceded by statute in the enactment of BAPCPA, and second, even under *Krohn*, a debtor's ability to repay a debt was by itself sufficient to warrant dismissal. The Court disagrees with both of these arguments.

■■■ As to the United States Trustee's first argument, the Court disagrees that the *Krohn* factors are no longer relevant because of the passage of BAPCPA. Rather, the Court agrees with those courts that have held that Congress incorporated the *Krohn* factors into revised Section 707(b)(3). Other bankruptcy courts have found that, under the BAPCPA, a debtor's ability to pay is still a primary but not a conclusive factor when looking at the totality of the circumstances under § 707(b)(3). *In re Norwood–Hill*, 403 B.R. 905, 912 (Bankr.M.D.Fla.2009) (citing *In re. Cribbs*, 387 B.R. 324, 334 (Bankr.S.D.Ga. 2008)).

The Court also disagrees with the United States Trustee's argument that *Krohn* provides that a bankruptcy court can dismiss a petition based on the ability to pay without considering any other circumstances. In *Krohn*, the Sixth Circuit analyzed the provision of § 707(b) which permitted the bankruptcy court to dismiss a petition as a substantial abuse of chapter 7. The Court noted that "[s]ubstantial abuse can be predicated upon either lack of honesty or want of need." *Krohn*, 886 F.2d at 126.

In determining whether a debtor was not needy, the Krohn court stated:

> Among the factors to be considered in deciding whether a debtor is needy is his ability to repay his debts out of future earnings. *Walton*, 866 F.2d at 984–85; *Kelly*, 841 F.2d at 914–15 (collecting cases). That factor alone may be sufficient to warrant dismissal. For example, a court would not be justified in concluding that a debtor is needy and worthy of discharge, where his disposable income perm its liquidation of his consumer debts with relative ease. Other factors relevant to need include whether the debtor enjoys a stable source of future income, whether he is eligible for adjustment of his debts through Chapter 13 of the Bankruptcy Code, whether there are state remedies with the potential to ease his financial predicament, the degree of relief obtainable through private negotiations, and whether his expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities.

*In re Krohn*, 886 F.2d 123, 126 –127 (C.A.6 (Ohio), 1989)

■ The United States Trustee interprets *Krohn* as permitting a bankruptcy court to find abuse by solely looking at the ability of a debtor to repay his debts out of future earnings. This interpretation, however, is inconsistent both with the language of *Krohn* and that of the statute, which requires the bankruptcy court to determine whether the petition is an abuse of Chapter 7 under the "totality of the circumstances" of the debtors financial situation. A better reading of *Krohn* is that the ability of the debtor to repay his debts out of future earnings may be the dispositive factor, but it does not permit the bankruptcy court to fail to consider the other *Krohn* factors in determining whether the petition is abusive under the totality of the circumstances. *Accord In re Beckerman*, 381 B.R. 841, 845 (Bankr. E.D.Mich.2008) ("Artificially limiting the Court's examination of a debtor's financial circumstances to one factor and one factor alone, the debtor's ability to repay debts out of future earnings, is at odds with the totality of the circumstances inquiry mandated by Congress and with the message of *Krohn*, which itself observed that the ability to repay debts was '[a]mong the factors to be considered in deciding whether a debtor is needy . . . .' ") (citation omitted); *In re Allen*, 411 B.R. 913, 920–21 (Bankr.S.D.Ga.2009) ("even though the primary factor is whether the debtor has the ability to repay a meaningful portion of his debts from future income, the United States Trustee must prove more."); *In re Norwood–Hill*, 403 B.R. 905, 912 (Bankr. M.D.Fla.2009) (*citing In re Cribbs*, 387 B.R. 324, 334 (Bankr.S.D.Ga.2008)). Here, the bankruptcy court limited itself to a single factor, the debtors' ability to repay debts out of future earnings, in determining that the petition was an abuse of Chapter 7 and by doing so the bankruptcy court committed error by failing to consider the totality of the circumstances of the debtors' financial situation. The Court will therefore reverse and remand this case to the bankruptcy court to determine whether the debtors' petition was an abuse of chapter 7 under the totality of the circumstances.[1]

---

**1.** While the issue is not squarely before this Court on the present appeal, the Court notes that the bankruptcy court's decision to dismiss the petition as an abuse solely on the basis of the debtors' payments to secured creditors is somewhat troubling as a matter of policy and statutory interpretation, in that it might tend to favor unsecured creditors at the expense of secured creditors, contrary to policy in the Code. *See In re Jensen*, 407 B.R. 378,

## A. Failure of bankruptcy court to hold an evidentiary hearing

The debtors also argue that the bankruptcy court erred in dismissing the petition without holding an evidentiary hearing. This Court agrees. As discussed above, in order to grant the Trustee's motion to dismiss under § 707(b)(3), the bankruptcy court must find that the Trustee has demonstrated by a preponderance of the evidence that the petition is an abuse of Chapter 7 under the totality of the circumstances. At a minimum, this would require the bankruptcy court to permit the debtors the opportunity to present evidence concerning the factors the *Krohn* court articulated as relevant to the question of whether the debtors can be considered "needy," including whether their disposable income permits liquidation of their consumer debts with relative ease, whether they have a stable source of future income, whether they are eligible for Chapter 13 relief, whether there are state remedies available, the degree of relief obtainable through private negotiations, and whether their expenses can be reduced significantly without depriving them of adequate food, clothing, shelter and other necessities *See Krohn*, 886 F.2d at 126–27. The debtors should also be allowed to introduce evidence as to the relevance of the IRS housing standards as the measure of reasonableness of the debtors' housing expenses under the totality of the circumstances. *See In re Harris*, 279 B.R. 254 (9th Cir.BAP2002) (finding that determination of abuse must be based on factual findings supported by admissible evidence; "neither the statute nor case law presently mandates the use of [the IRS] standards in the § 707(b) analysis ... [and] the evidentiary value of the IRS standards is questionable" absent foundation showing how standards were calculated, based upon what data, or how current the data might be).

## CONCLUSION

For the foregoing reasons, the decision of the bankruptcy court dismissing the Moutousis' Chapter 7 petition as an abuse is **REVERSED**. This matter is **REMANDED** to the bankruptcy court for further proceedings consistent with this opinion.

384–86 (Bankr.CD.Cal.2009) (refusing to consider money paid by debtors account of secured debt as income available to pay secured creditors because such a construction would directly contradict the policies favoring secured debt implicit in the Means Test).